Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50170 | **DATE** | 4/3/2002 |
| **CASE TITLE** | Barten vs. Bates, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendants' motion for summary judgment is denied. Counsel for all parties are ordered to appear for a status hearing before Judge Reinhard on Wednesday, April 10, 2002, at 9:00 a.m.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | 2 number of notices | |
| X | Notices mailed by judge's staff. | APR - 3 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 4/3/02 date mailed notice | |
| /LC | courtroom deputy's initials | 2002 APR -3 PM 2:46 U.S. DISTRICT COURT Date/time received in central Clerk's Office | CR mailing deputy initials |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Herbert E. Barten ("Herbert"), has filed a seven-count amended complaint against defendants, David Bates, James Hess, and David Mordt, in their individual and official capacities as a deputy sheriff, sergeant deputy sheriff, and deputy sheriff, respectively, for the Boone County Sheriff's Department. With the court dismissing portions of the complaint early on in the case, what remains are Herbert's individual capacity claims against Bates and Hess under 42 U.S.C. § 1983 for false arrest in violation of the Fourth Amendment (Count I) and various state law claims against these two defendants (Counts V - VII). The court has original jurisdiction over Count I based on 28 U.S.C. § 1331 and supplemental jurisdiction over Counts V - VII based on 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b)(2). Before the court is Bates and Hess' motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.

On May 23, 1998, after responding to a report about a domestic dispute at Herbert's home, Bates, with the approval of his supervisor, Hess, arrested Herbert for domestic battery. This decision was based principally on the following facts: Herbert was involved in a physical altercation with his sixteen-year-old son, Joseph, Bates had observed injuries to Joseph, including blood on his pants and right hand, a cut lip, and a bruise on his left ear, but had seen no injuries on Herbert, and Joseph's statement to Bates that he had received his injuries during the fight with his father. The next day, Bates also charged Herbert with obstruction of justice, believing Herbert tried to cover up the true reason for the fight between him and his son the day before. In the court's opinion, however, when all of the facts and reasonable inferences therefrom are viewed in the light most favorable to Herbert, and all of the other facts and circumstances known to Bates and Hess at the time are weighed against those relied on by them to arrest Herbert, a reasonable jury could conclude both charges lacked probable cause.

First and foremost, the officers knew Joseph was at that time an unreliable and untrustworthy witness. Indeed, the same officers had been called out to the Barten home on numerous occasions within the previous six to eight months because of problems with Joseph and knew Joseph to be a truant and drug and alcohol abuser. Bates himself had been to the Barten home just a few months before on a similar incident when Joseph admitted throwing a bar stool at Herbert and slapping Herbert on the back while Herbert tried to defend himself with a broken BB gun. Also, according to his deposition testimony, Joseph told the officers on May 23rd that he had been drinking and smoking marijuana that day, making him even less credible. And besides knowing Joseph had a history of attacking his father, at least on one prior occasion, and was not a credible person, the officers also knew Joseph had immediately fled the scene after the police had been called that day and was reluctant to meet with them afterwards. See Hebron v. Touhy, 18 F.3d 421, 422-23 (7th Cir. 1994) ("Sometimes information from or about a person claiming to be the victim of crime would lead a reasonable officer to be suspicious, making further investigation prudent – and, because the 'reasonableness' standard of the fourth amendment links the constitutional obligation to the standard of prudent conduct, the officer must do more.") Yet despite all of this, even if Joseph were to be believed, he nevertheless testified that he told Bates he started hitting his dad, who was only defending himself, and the fight was his (Joseph's) fault.

On the other hand, Herbert was cooperative, waited on his front stoop for the officers to arrive, and clearly told Bates he had merely defended himself during the incident and did not strike Joseph. It was also well-known that Herbert was physically handicapped and that his feet and hands were deformed. In addition, Hess spoke with Herbert's next-door neighbor, David Fessler, who witnessed most of the incident. Fessler testified in his deposition that he told Hess he saw Joseph shove Herbert out the front door of the Barten home, saw Herbert and Joseph wrestling on the ground with Joseph more or less on top of Herbert, and then saw Joseph chasing Herbert with a golf club and swinging it in the area of the front door where Herbert had gone back inside the house. Thus, although the officers could have reasonably believed Joseph's minor injuries occurred during the altercation with Herbert, they had no credible evidence that Herbert had "intentionally or knowingly without legal justification" caused bodily harm to his son, as the Illinois domestic battery statute requires, see 720 ILCS 5/12-3.2(1), but did have reliable evidence that Joseph attacked Herbert while Herbert tried to defend himself (making it likely either that Joseph caused his own injuries during the scuffle or that Herbert caused Joseph's injuries while simply trying to fend Joseph off).

Further compounding the officers' haste in arresting Herbert was that, according to Herbert, Bates did little in the way of follow-up. For example, other than noticing a scratch on his leg, which Herbert said was not related to the altercation, Bates did not ask Herbert if he had any other injuries. (In fact, Joseph had hit Herbert across the back with the golf club, with enough force to bend the club.) In addition, when the officers returned from talking with Joseph at a nearby community center, Bates simply proceeded to arrest Herbert without any further questions. The officers admit Herbert was not dangerous or a flight risk (indeed, they left him unattended while they went to speak with Joseph), so exigency certainly did not prevent them from asking more questions. See BeVier v. Hucal, 806 F.2d 123, 127 (7th Cir. 1986). To this end, it appears several other disinterested third-party witnesses easily could have been questioned at the same time, as Fessler was having a weekend barbecue that day and many of his guests also saw what happened. See id. Finally, the officers had already secured Joseph and sent him to the hospital for medical attention, so there was no threat of the incident repeating itself. See id. Given all of these circumstances as they were known to Bates and Hess, the court finds questions of fact remain as to whether they had probable cause to arrest Herbert for domestic battery and, thus, whether further investigation was necessary. As Bates relied primarily on information he obtained from Joseph the day after the altercation to charge Herbert with obstruction of justice, and the court has already recounted the officers' awareness of Joseph's shaky credibility, the court similarly finds questions of fact remain on whether Bates had probable cause for this charge. These same questions of fact also prevent the court from granting Bates and Hess qualified immunity on Herbert's § 1983 claim, as well as granting summary judgment on Herbert's state law false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress claims.

For the reasons stated above, Bates and Hess' motion for summary judgment is denied.